**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| JANICE H.,[1] | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | )   Civil No. 3:22-cv-00630-HEH-SLS |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of the | ) |
| Social Security Administration,[2] | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

## REPORT AND RECOMMENDATION

In this action, Plaintiff Janice H. seeks review of the Commissioner of the Social Security

Administration's ("SSA") decision to deny her Title II application for disability insurance benefits

and Title XVI application for Supplemental Security Income ("SSI").  This matter comes before

the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for

summary judgment.  (ECF Nos. 18, 21.)  The motions have been fully briefed (ECF Nos. 18, 19,

21, 22), rendering this matter ripe for disposition.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo*

hearing and new decision.  (Plaintiff's Memorandum of Law in Support of Social Security Appeal

(ECF No. 19) ("Pl.'s Mem.") at 21.)   As the basis for such relief, Plaintiff argues that the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of
the United States has recommended that federal courts refer to claimants by their first names and
last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting
Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to
continue this suit.  42 U.S.C. § 405(g).

Administrative Law Judge's ("ALJ") mental residual functional capacity ("RFC") determination is not supported by substantial evidence because the ALJ improperly evaluated the medical opinion of Daeryl Williamson, N.P. ("N.P. Williamson") and Dan A. Jacobsen, LCSW ("LCSW Jacobsen"). (Pl.'s Mem. at 1, 14-21.) In response, the Commissioner contends that the ALJ properly considered the objective medical evidence, Plaintiff's reported activities, and the medical opinions, and therefore substantial evidence supports the ALJ's RFC determination. (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 21) ("Def.'s Mem.") at 8-16.)

For the reasons set forth below, the Court finds that the ALJ properly assessed the medical opinion evidence in accordance with the regulations and that substantial evidence supports the ALJ's RFC findings. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 18) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 21) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and SSI on June 24, 2020, alleging disability beginning June 8, 2020. (Administrative Record ("R.") at 264, 266, 296.)[3] Plaintiff, age fifty-one at the time of her application date, previously worked as a licensed practical nurse ("LPN"), a cashier, a sales attendant, and an assistant sales manager. (R. at 54-55, 67.) Plaintiff alleges an inability to work due to alcohol dependency, morbid obesity, placentitis, major

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

depression, anxiety, biliary colic, disc issues, ulcer, hydronephrosis, left ureteral calculus, chronic back pain, atrial flutter, sleep apnea, stroke, hypertension, ablation treatment, and high cholesterol. (R. at 295.)  The SSA denied Plaintiff's claims initially and again upon reconsideration.  (R. at 121, 123.)  Plaintiff requested a hearing before an ALJ, and a hearing was held on October 5, 2021. (R. at 44-73, 181.)

On November 9, 2021, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Social Security Act ("the Act").  (R. at 15-33.)  On July 25, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.  (R. at 1-3.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) and § 1383(c).

## II.       STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).  At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial

3

gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements.  *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations.  *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments.  *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given his or her residual functional capacity.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude him or her from performing the claimant's past relevant work.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472.  If such past work can be performed, then benefits will not be awarded, and the analysis ends.  20 C.F.R §§ 404.1520(e), 416.920(e).  However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy.  *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner usually offers this evidence through the testimony of a vocational expert ("VE").  *Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant

evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

## III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process. (R. at 17-33.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 636 (describing the ALJ's five-step sequential evaluation). At step one, the ALJ determined that

5

Plaintiff had not engaged in substantial gainful activity since June 8, 2020, (the alleged onset date). (R. at 19.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: cardiac dysrhythmias/paroxysmal atrial fibrillation, degenerative disk disease of the lumbar spine, degenerative disk disease of the cervical spine, osteoarthritis of the bilateral shoulder, joint dysfunction of the knee, depression, anxiety, and substance abuse disorder. (R. at 19.)

At step three, the ALJ determined that including Plaintiff's substance use, the severity of Plaintiff's impairments met the criteria of section 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1, for depressive disorders (20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925). (R. at 20-26.) In making this finding, the ALJ detailed Plaintiff's medical record, including medical evidence regarding treatment for alcohol abuse and mental health issues. (R. at 21-26.) Specifically, the ALJ noted the following:

- a 2017 evaluation for suicidal ideation;

- an early 2019 admission for worsening mood and suicidal ideation related to Plaintiff sleeping four hours per night and consuming three 24-ounce beers the previous day and resulting in stabilization services with occupation therapy;

- ongoing severe alcohol abuse in 2019, which resulted in (1) a June 2019 admission for physical detoxification, at which time Plaintiff was "anxious and tremolos" and received medication to assist with physical symptoms; and (2) a late 2019 admission to an alcohol rehabilitation program;

- an early-2020 readmission to the alcohol rehabilitation program after Plaintiff reported consuming vodka for two days;

- a May 2020 report of abdominal pain and difficulty with digestion after consuming alcohol the day before;

- a June 2020 treatment for alcohol withdrawal syndrome;

- "Follow-up primary care assessments noted orientation x3 with normal mood; linear, logical, and goal directed thought processes; intact memory; fair judgment; and no evidence of hallucinations, delusions, or acute thought content irregularities";

6

- Plaintiff's depression, anxiety, and insomnia were monitored and managed on an outpatient basis;

- an October 2020 report of Plaintiff continuing to drink alcohol, accompanied by concurrent mental symptoms including depression, anxiety, anhedonia, and passive suicidal thoughts;

- "Mental status assessments continued to note intact insight, judgment, orientation, recent memory, remote memory, attention, concentration, thought processes, and thought content";

- continued reports of Plaintiff "binge drinking approximately two times per week, consuming a pint of vodka and following that up with a 24 ounce beer;"

- "Ongoing symptoms of anxiety and depression" monitored on an outpatient basis with Plaintiff reporting that medications helped control her behavioral symptoms;

- "A November 2020 mental status examination found no signs of impairment, while presenting as depressed and irritable;"

- a December 2020 6-day hospitalization "with a recurrence of mental health symptoms and ongoing severe alcohol abuse disorder;"

- normal behavior, thought content, judgment, and mental status reported in March 2021;

- a hospitalization later in March 2021 due to "depression, suicidal ideation, alcohol abuse, and a positive screening for opiates at admission" followed by a discharge "several days later without significant problems of depression, psychosis, or mania;"

- intact functioning statuses noted in psychotherapy treatment records;

- a September 2021 report of mood instability associated with failing to take medications and followed by encouragement to maintain compliance with medications to avoid a relapse;

- Plaintiff continued to report depression and anxiety and participated in group therapy; and

- mental status evaluations noted fair insight and judgment, goal-oriented thought processes, and no acute thought content irregularities.

(R. at 22-24 (internal record citations omitted).)  The ALJ summarized: "During the period at issue, the record reflects several recurrent hospitalizations for alcohol withdrawal syndrome and suicidal ideation.  She was hospitalized in late 2020 and early 2021, and there is ongoing concern of mood

7

instability noted when she does not take her medications or maintain sobriety." (R. at 24.)  Taking into account the "frequency of [Plaintiff's] ongoing substance abuse, and the mental complications that recur with alcohol consumption," the ALJ determined that Plaintiff had moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, and marked limitations in interacting with others and adapting or managing oneself. (R. at 24.)  Therefore, considering impairments resulting from Plaintiff's substance abuse, the ALJ found that Plaintiff met the criteria for Listing 12.04. (R. at 24.)

However, the ALJ determined that if Plaintiff ceased her substance abuse, Plaintiff would not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(f), 416.994(b)(5)(i)). (R. at 26-29.)  Specifically, if Plaintiff ceased her substance abuse, the ALJ found that Plaintiff had only moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. at 28.)  In support of these findings, the ALJ noted that during periods of sobriety: (1) mental status evaluations documented no acute issues with memory, focus, or thought content; (2) Plaintiff's mental impairment symptoms were effectively managed with medications and outpatient treatments; and (3) Plaintiff had the capacity to care for some personal hygiene needs and assist with household chores, text and talk on the phone, take her medications, attend alcoholism zoom meetings, shop for groceries, manage a checking and savings account and count change, read, watch television, and maintain regular medical appointments. (R. at 28.)

The ALJ then determined Plaintiff's RFC if Plaintiff stopped substance use. (R. at 29-32.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to

perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> [Plaintiff] can occasionally push, pull, or reach overhead with left upper extremity. [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs; and can never climb ladders, ropes, or scaffolds. [Plaintiff] can have no more than occasional exposure to extreme cold and no work with heights, hazards, or moving mechanical parts. [Plaintiff] can understand, remember, apply, or carry out simple, routine tasks, consistent with unskilled work. [Plaintiff] can concentrate, persistent [sic], and maintain pace to complete unskilled tasks that do not require a production rate pace meaning fast pace. [Plaintiff] may have routine and occasional interaction with supervisors, co-workers, and no contact with the public, in settings where tasks involve work primarily with objects rather than people. Finally, [Plaintiff] may adapt to occasional changes associated with unskilled work.

(R. at 29.)

The ALJ explained that she determined Plaintiff's RFC after considering "the entire record," in accordance with the regulations. (R. at 29.) Specifically, the ALJ had already engaged in an extensive recitation of Plaintiff's medical record, including Plaintiff's self-reported history of anxiety and depression. (R. at 21.) The ALJ also had acknowledged Plaintiff's comments at the hearing regarding her hospitalizations for mental health crises and how her medication management "provides some relief but does not fully alleviate her complaints." (R. at 21.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 30.) For example, in considering Plaintiff's mental impairments, the ALJ noted that "the records from periods of sobriety and medication compliance are otherwise conservative, routine, and outpatient, with no evidence of acute mental complications that have required further assessment from a specialist independent of her substance abuse." (R. at 30.) Although Plaintiff "continued to endorse depression and anxiety," "mental status evaluations noted fair insight and judgment, . . . goal-oriented thought processes, and no acute thought content

irregularities." (R. at 30 (internal record citations omitted).) In addition, Plaintiff "retains at least some capacity to care for some personal hygiene needs, take her medications, attend alcoholism zoom meetings, assist with household chores, prepare frozen and simple meals, shop for groceries using a cart, count change, handle a savings account, use a checkbook, read, watch television, and maintain regular medical appointments." (R. at 30 (internal record citations omitted).) The ALJ also noted that Plaintiff "was able to maintain substantial employment for many years, including from 2015-2019." (R. at 30.) Based on the "conservative and grossly outpatient treatment history" during periods of sobriety, "the clinical and examination findings of no acute complications," and Plaintiff's "stated ongoing capabilities," the ALJ found "improvements in mental functioning with sobriety and medication compliance" resulting in only moderate limitations in functioning consistent with the ALJ's RFC determination. (R. at 31.)

The ALJ also fully considered and weighed the medical opinions and prior administrative medical findings. (R. at 24.) Specifically, the ALJ gave only partial weight to a September 21, 2016 decision by ALJ Nicolas R. Foster, which found Plaintiff was "limited to light work with frequent posturals; no climbing of ladders, ropes, or scaffolds; avoid concentrated exposure to cold and workplace hazards; and simple routine tasks with no more than occasional contact with supervisors, co-workers, and the general public." (R. at 29.) Given the passage of time and submission of additional evidence, the ALJ found greater restrictions warranted based on moderate limitations resulting from mental impairments. (R. at 29.)

Regarding medical opinion evidence, the ALJ considered August 2020 medical opinions of state agency psychologists who found Plaintiff had moderate limitations on concentration, persistence, and pace, but that she could perform light work with mental non-exertional restrictions. (R. at 24-25.) The ALJ also reviewed the reconsideration assessment which adopted

10

moderate limitations in areas assessing mental health criteria and a light RFC with corresponding manipulative, postural, and mental restrictions.  (R. at 25.)   The ALJ found these opinions somewhat persuasive, as they were "supported by extensive reference to evidence in support of their conclusions throughout the record . . . . However, the evidence submitted at the hearing level is otherwise more consistent with the adopted residual functional restrictions in the sobriety [RFC] . . . ."  (R. at 25; *see also* R. at 31.)

The ALJ also considered the medical opinions of N.P Williamson and LCSW Jacobsen, both at issue in this matter.  (R. at 25-26, 31.)  LCSW Jacobsen listed Plaintiff's prognosis as "poor" and opined that she "suffered from marked to extreme limitations in all aspects of workplace functioning."  (R. at 25, 5129-34.)  LCSW Jacobsen further opined that Plaintiff "could concentrate for no more than five minutes at one time, she required special supervision, and she would be off task more than 25% of a workday and miss four days of work per month."  (R. at 25.)  Importantly, LCSW Jacobsen acknowledged he first started treating Plaintiff on September 7, 2021 and prepared the assessment on September 21, 2021.  (R. at 25, 5129, 5133.)  The ALJ found this assessment unpersuasive because, "[e]ven when accounting for [Plaintiff's] substance abuse, the severity of assessed extreme limitations is not supported by referenced clinical findings, as the treating relationship is new and does not account for the longitudinal history noted above."  (R. at 25.)  The ALJ further found that LCSW Jacobsen's assessment was not supported by "the clinical and examination findings, the grossly conservative and outpatient treatment history, or [Plaintiff's] documented ongoing capabilities in spite of her impairment."  (R. at 25.)

In an October 7, 2021 assessment, N.P. Williamson noted Plaintiff's prognosis as fair, listed Plaintiff's diagnoses as "major depressive disorder, recurrent, moderate; alcohol dependence; rule out bipolar disorder," and reported that "she remained markedly limited in her

ability to concentrate, persist, and maintain pace, or adapt and manage herself." (R. at 25, 5334-

38.) While N.P. Williamson found moderate limitations in memory, he opined that Plaintiff had

"marked restrictions in remembering work procedures and carrying out detailed instructions." (R.

at 25-26.) N.P. Williamson also noted that Plaintiff would be off task ten percent of the time and

would miss more than four days of work per month. (R. at 26.) The ALJ found this assessment

to be only somewhat persuasive. (R. at 26.) Specifically, the ALJ noted that "it is a conclusory

form and not supported by additional reference to records consistent with the severity of adopted

conclusions." (R. at 26.) The ALJ agreed that the record supported marked restrictions when

accounting for Plaintiff's substance abuse, but found that if Plaintiff stopped the substance abuse,

N.P. Williamson's restrictions were inconsistent with "the clinical findings of no acute thought

content irregularities, the grossly conservative post-admission treatment history, and [Plaintiff's]

documented ongoing capabilities." (R. at 26.)

In summarizing the weight assigned to LCSW Jacobsen's and N.P. Williamson's opinions,

the ALJ stated:

> The severity of assessed restrictions remains unsupported by the clinical findings
> described throughout the longitudinal history or [Plaintiff's] documented functional
> capacity, including her ability to work for substantial employment through 2020.
> Furthermore, when looking at her mental functioning *independent* of substance
> abuse, the record reflects a greater capacity for social interaction and adaptation
> than originally considered when considering the additional restrictions from her
> alcoholism.

(R. at 31.)

At step four, the ALJ concluded that Plaintiff is unable to perform past relevant work based

on the ALJ's RFC findings and VE's testimony. (R. at 32.) Specifically, the ALJ explained that

Plaintiff's prior work of assistant manager, sales attendant, cashier, and LPN "entailed light to

medium exertion and would not account for the exertional and non-exertional restrictions in the adopted residual functional capacity." (R. at 32.)

The ALJ then proceeded to step five and found that if Plaintiff stopped substance use, jobs existed in significant numbers in the national economy that Plaintiff can perform within the light work category and consistent with the ALJ's RFC determination. (R. at 32-33.)  As part of this process, the ALJ considered the testimony of a VE, who testified that given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform the requirements of merchandise marker, routing clerk, and photocopy machine operator. (R. 32-33.)  Because the ALJ determined that if Plaintiff ceased her substance abuse, Plaintiff would "be capable of making a successful adjustment to work that exists in significant numbers in the national economy," the ALJ concluded that Plaintiff was not disabled under the Act.  (R. at 33.)  The ALJ explained: "Because the substance use disorder is a contributing factor material to the determination of disability, [Plaintiff] has not been disabled within the meaning of the [SSA] at any time from the alleged onset date through the date of this decision."  (R. at 33.)

## IV.    ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence.  *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340).  "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).  Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently

if it were conducting a *de novo* review of the record.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

For the reasons that follow, the Court finds that the ALJ properly assessed the medical opinion evidence in accordance with the regulations and substantial evidence supports the ALJ's determinations.

### A. Applicable Standard for Evaluating Medical Opinion Evidence for Plaintiff's Claim

The Court evaluates claims involving medical opinion evidence filed on or after March 27, 2017 using a revised regulatory framework.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  This framework applies in Plaintiff's case.  (*See* Pl.'s Mem. at 13.)  The revised regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources, no matter the source. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a).

Under the regulations, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(b)-(c). Supportability and consistency are the "most important" factors, and the ALJ must discuss how

these factors were considered in the written opinion.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).  The

regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and
> supporting explanations presented by a medical source are to support his or her
> medical opinion(s) or prior administrative medical finding(s), the more persuasive
> the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative
> medical finding(s) is with the evidence from other medical sources and nonmedical
> sources in the claim, the more persuasive the medical opinion(s) or prior
> administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain

how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

### B.  The ALJ's Evaluation of N.P. Williamson's Medical Opinion Complies with Regulations and Substantial Record Evidence Supports the ALJ's Findings

#### 1.  *N.P. Williamson's Medical Opinion*

N.P. Williamson had treated Plaintiff since December 28, 2020.  (R. at 5334.)  On October

7, 2021, N.P. Williamson completed a Treating Source Statement in which he discussed Plaintiff's

psychological conditions and their impact on Plaintiff's ability to perform work-related activities.

(R. at 5334-38.)   N.P. Williamson opined that Plaintiff's prognosis was fair regarding her

diagnosed major depression disorder and alcohol dependence.  (R. at 5334.)  He stated that Plaintiff

experienced disturbances in her mood and sleep, loss of interest in almost all activities and loss of

appetite, and decreased energy levels and decreased ability to concentrate.  (R. at 5335.)  N.P.

Williamson also affirmed that Plaintiff displayed psychomotor agitation or retardation, feelings of

guilt or worthlessness, and had thoughts of suicide.  (R. at 5335.)  When asked to give specific

clinical findings to support his opinions, N.P. Williamson wrote that he observed the above

symptoms from Plaintiff's "depression, anhedonia, low motivation, insomnia, fatigue, difficulty

concentrating, and decreased appetite with frequent suicidal ideation and a history of suicide attempts." (R. at 5335.)

N.P. Williamson then assessed Plaintiff's limitations in different mental functioning areas. (R. at 5336.) Specifically, N.P. Williamson opined that Plaintiff's ability to understand, remember, or apply information was mildly limited; her ability to concentrate, persist, or maintain pace was markedly limited; and her ability to adapt or manage herself was markedly limited. (R. at 5337.) N.P. Williamson noted that Plaintiff could retain long-term memory with no limitation, but her short-term memory was moderately limited. (R. at 5337.) Furthermore, N.P. Williamson noted that Plaintiff was markedly limited in remembering locations and work-like procedures; moderately limited in understanding and carrying out very short and simple instructions; and markedly limited in understanding and carrying out detailed but uninvolved written or oral instructions. (R. at 5337.)

According to N.P. Williamson, Plaintiff could: (1) maintain attention and concentration for less than five minutes before needing redirection or requiring a break; (2) maintain regular attendance and be punctual within customary tolerances; (3) work without requiring enhanced supervision; (4) sometimes, but not consistently, work appropriately with the general public and co-workers; and (5) sometimes, but not consistently, maintain socially appropriate behavior and respond appropriately to changes in work settings. (R. at 5337-38.) Finally, N.P. Williamson opined that Plaintiff likely would be off task ten percent of the time and would be absent from work four or more days per month. (R. at 5338.)

### 2. The ALJ's Evaluation of N.P. Williamson's Opinion

The ALJ summarized N.P. Williamson's opinion and found his assessment "somewhat persuasive." (R. at 26.) The ALJ reasoned:

> [The assessment] is a conclusory form and not supported by additional reference to records consistent with severity of adopted conclusions. Furthermore, while the record reflects marked restrictions when accounting for her substance abuse, the conclusions are otherwise not entirely supported by the clinical findings of no acute thought content irregularities, the grossly conservative post-admission treatment history, and [Plaintiff]'s documented ongoing capabilities.

(R. at 26.)

Plaintiff argues that the ALJ failed to properly address supportability and when evaluating N.P. Williamson's medical opinion. (Pl.'s Mem. at 15-16.) Specifically, Plaintiff contends that the ALJ provided no indication as to how she considered N.P. Williamson's provided explanations or treatment notes and therefore failed to fashion an adequate narrative connecting the evidence to her conclusions. (Pl.'s Mem. at 15-16.) Plaintiff also argues that the ALJ did not properly address consistency when evaluating N.P. Williamson's medical opinion. (Pl.'s Mem. at 16-17.) Specifically, Plaintiff characterizes the ALJ's conclusion that her marked limitations only appear under alcohol abuse as improper because "the record demonstrates that Plaintiff's mental impairments were not entirely contemporaneous with her alcohol abuse." (Pl.'s Mem. at 16-17.) The Court finds no error in the ALJ's analysis of N.P. Williamson's medical opinion.

The ALJ engaged in an extensive analysis of Plaintiff's medical records and sufficiently addressed both supportability and consistency when considering N.P. Williamson's medical opinion. (R. at 26, 28-31.) Supportability is "the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)). Here, the ALJ noted that the findings and conclusions were not supported by reference to medical records or clinical findings. (R. at 26.) Indeed, when asked to identify "particular clinical findings including results of mental status examination which demonstrate the severity of [the] patient's mental impairment and symptoms," N.P. Williamson failed to do so. (R. at 5335.) Instead, N.P. Williamson listed Plaintiff's diagnoses

and symptoms.  (R. at 5335.)  Further, when asked to provide an example of Plaintiff's limitation

on the ability to understand, remember, or apply information, N.P. Williamson merely repeated

his conclusion that Plaintiff was "able to understand information, [but] require[d] help applying

it." (R. at 5336.)  Similarly, when asked to give an example about Plaintiff's ability to concentrate,

persist, or maintain pace, he responded that Plaintiff had "[marked] difficulty concentrating, unable

to focus to read a page." (R. at 5336.)  As an example of Plaintiff's inability to adapt or manage

herself, N.P. Williamson wrote that Plaintiff "becomes easily stressed and triggered and is then

unable to adapt." (R. at 5336.)  Lastly, when prompted to give examples of Plaintiff's

understanding and memory, N.P. Williamson stated that "information frequently needs to be

repeated." (R. at 5337.)  All together, N.P. Williamson provided scant examples to support his

conclusions.  Moreover, as the ALJ pointed out, N.P. Williamson's assessment related to his

treatment of Plaintiff for both depression and alcohol dependence, and the ALJ found the marked

restrictions appropriate only when accounting for Plaintiff's substance abuse.  (R. at 26, 31, 5334.)

The Court finds that the ALJ reasonably determined that N.P. Williamson's explanations did not

provide enough support for his assessments, that the ALJ provided a sufficient narrative linking

the evidence to her conclusions, and that the ALJ's decision allows for meaningful review.  (R. at

25-26, 31, 5334-37.)

The Court also finds no error in the ALJ's finding that N.P. Williamson's opinion was

inconsistent with the record.  (R. at 26, 31.)  While the ALJ agreed that the record supported

marked restrictions when accounting for Plaintiff's substance abuse, she found that "the clinical

findings of no acute thought content irregularities, the grossly conservative post-admission

treatment history, and [Plaintiff's] documented ongoing capabilities" contradicted the severity of

N.P. Williamson's assessed restrictions.  (R. at 26; *see also* R. at 31.)[4]  Specifically, after detailing

Plaintiff's medical record, including those touching on Plaintiff's mental impairments (R. at 22-

24), the ALJ found that during periods of sobriety, Plaintiff's mental status evaluations

documented no acute issues with memory, focus, or thought content, her symptoms were

effectively managed with medications and outpatient treatments, and Plaintiff had the capacity to

care for some personal hygiene needs and assist with household chores, text and talk on the phone,

take her medications, attend alcoholism zoom meetings, shop for groceries, manage a checking

and savings account and count change, read, watch television, and maintain regular medical

appointments (R. at 28).  Thus, the ALJ found that Plaintiff would have moderate limitations in all

four areas of functioning "if the substance use was stopped."  (R. at 28.)  The Court finds no

reversable error in this conclusion.

Based on the ALJ's extensive consideration of the record evidence, the undersigned finds

that the ALJ's evaluation of N.P. Williamson's medical opinion sufficiently addressed both

supportability and consistency factors and substantial evidence supports the ALJ's findings.

---

[4] In her Reply Memorandum, Plaintiff contends that to the extent the ALJ explained her reasoning
elsewhere in the decision, she failed to "'specifically connect the record evidence she discussed
elsewhere' to the opinion."  (Pl.'s Mem. at 3 (citing *Moore v. Kijakazi*, No. 5:21-cv-04202-DCN-
KDW, 2023 WL 2583225, at *4 (D.S.C. Mar. 21, 2023)).)  The Court disagrees.  In the *Moore*
case, the ALJ failed to evaluate the medical support or suggested treatment options provided in a
medical opinion and failed to compare the medical opinion against the evidence of record.  2023
WL 2583225, at *4.  Although the ALJ discussed record evidence in other portions of her decision,
the *Moore* court determined that she did not sufficiently connect those prior discussions to the
analysis of the medical opinion "to build the required bridge" for meaningful judicial review.  *Id.*
(quoting *Boyd v. Kijakazi*, No. 2:21cv29, 2022 WL 949904, at *3 (E.D. Va. Mar. 29, 2022)).  In
contrast to *Moore*, the ALJ here clearly referenced prior sections in which she analyzed Plaintiff's
mental health treatment, reported symptoms, and stated capabilities.  In this way, she provided the
logical bridge that allows for meaningful review.  Moreover, "[an] ALJ need not repeat pertinent
findings multiple times throughout a ruling for the purpose of supporting individual conclusions."
*John R. v. Kijakazi*, No. 2:22cv47, 2023 WL 2682358, *4 (E.D. Va. Mar. 29, 2023).

**B. The ALJ's Evaluation of LCSW Jacobsen's Medical Opinion Complies with Regulations and Substantial Record Evidence Supports the ALJ's Findings**

*1. LCSW Jacobsen's Medical Opinion*

LCSW Jacobsen first started treating Plaintiff on September 7, 2021 and completed a medical opinion form two weeks later on September 21, 2021. (R. at 5129-33.) The form asked LCSW Jacobsen to assess Plaintiff's psychological conditions and their impact on Plaintiff's ability to perform work-related activities. (R. at 5129-33.) Overall, LCSW Jacobsen determined that Plaintiff's prognosis was poor. (R. at 5129.) For Plaintiff's signs and symptoms, LCSW Jacobsen opined that Plaintiff had mood disturbances resulting from depressive syndrome and bipolar syndrome with a history of episodic periods. (R. at 5129.) LCSW Jacobsen noted that Plaintiff was extremely limited in her ability to interact with others. (R. at 5130.) He then found that Plaintiff had marked limitations in her ability to: concentrate, persist, or maintain pace; adapt or manage herself; maintain short term memory; remember locations and work-like procedures; understand and carry out short and simple instructions; and understand and carry out detailed, but uninvolved written or oral instructions. (R. at 5130-31.) He determined that Plaintiff was mildly limited in her long-term memory. (R. at 5130-31.)

LCSW Jacobsen then noted that Plaintiff could only maintain attention and concentrate for less than five minutes before needing redirection or requiring a break. (R. at 5131.) For Plaintiff's ability to interact socially, LCSW Jacobsen noted that Plaintiff could not work appropriately with either the general public, co-workers, or supervisors and required enhanced supervision. (R. at 5131.) In addition, LCSW Jacobsen stated that Plaintiff could not respond appropriately to changes in work settings. (R. at 5131.) Finally, LCSW Jacobsen concluded that Plaintiff would

likely be off task for more than 25 percent of the time and absent from work more than four days per month.  (R. at 5131-33.)

    *2.   The ALJ's Evaluation of LCSW Jacobsen's Medical Opinion*

After summarizing LCSW Jacobsen's medical opinion, the ALJ found it "not persuasive." (R. at 25.)  The ALJ explained:

> Even when accounting for [Plaintiff's] substance abuse, the severity of assessed extreme limitations is not supported by referenced clinical findings, as the treating relationship is new and does not account for the longitudinal history noted above. Furthermore, the severity of assessed extreme restrictions in all categories is not entirely supported by the clinical and examination findings, the grossly conservative and outpatient treatment history, or [Plaintiff's] documented ongoing capabilities in spite of her impairment.

(R. at 25.)

Plaintiff argues the ALJ committed multiple errors in her consideration of LCSW Jacobsen's opinion.  First, Plaintiff argues that the ALJ rejected LCSW Jacobsen's opinion without sufficiently addressing its supportability with the other record evidence.  (Pl.'s Mem. at 18-21.) Specifically, Plaintiff contends LCSW Jacobsen supported his opinion by listing various symptoms Plaintiff reported.  (Pl.'s Mem. at 19.)   The ALJ's decision, however, considered Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms" and found them "not entirely consistent with the medical evidence and other evidence in the record . . . ."  (R. at 30.)  Specifically, the ALJ found that Plaintiff's symptoms caused only moderate limitations during periods of sobriety as supported by mental status evaluations during such periods.  (R. at 30.)  In addition, the ALJ found that Plaintiff's "stated ongoing capabilities" further supported more moderate limitations in mental impairments when the alcohol abuse stopped.  (R. at 30-31.)  The ALJ also noted that, because LCSW Jacobsen only started treating Plaintiff in September of 2021 and prepared his medical opinion that same month, his relatively

brief treating relationship did not account for Plaintiff's longitudinal medical history that had been discussed in the ALJ's opinion. (R. at 25.) Thus, the ALJ did not err in finding that LCSW Jacobsen's opinion lacked support.

Plaintiff next argues that the ALJ's characterization of her mental health treatment as "grossly conservative" cannot be reconciled with the record. (Pl.'s Mem. at 20.) Plaintiff cites her history of depression and anxiety, hospitalizations, suicidal ideations, and continued social isolation after almost two months of alcohol sobriety as support for her argument that her treatment was anything but conservative. (Pl.'s Mem. at 20.) The ALJ's opinion acknowledged Plaintiff's lengthy mental health treatment history. The ALJ listed Plaintiff's depression, anxiety, and substance abuse disorder as three of her severe impairments. (R. at 19.) The ALJ discussed Plaintiff's multiple hospitalizations and admissions to rehabilitation programs relating to her substance abuse disorder and mental health condition. (R. at 22-24.) However, the ALJ's decision also found that during periods of sobriety, medication and outpatient treatments effectively managed Plaintiff's mental health symptoms and medical evaluations showed normal mood; linear, logical, and goal directed thought processes; intact memory; and fair judgment. (R. at 22-24.) In sum, the ALJ found that "the records from periods of sobriety and medication compliance are otherwise conservative, routine, and outpatient, with no evidence of acute mental complications that have required further assessment from a specialist independent of her substance abuse."[5] (R. at 30.) The Court finds no error in the ALJ's characterization of Plaintiff's mental

---

[5] Last year, the Fourth Circuit noted that "[a] growing number of district courts have held that in cases where claimants consume antidepressant, anticonvulsant, and/or antipsychotic drugs, consistently attend visits with mental health professions, and endure constant medication adjustment and management, their treatment is classified as anything but 'routine and conservative.'" *Shelley C. v. Commissioner of Social Security Administration*, 61 F.4th 341, 363 (4th Cir. 2023). Moreover, in the *Shelley C.* decision, the claimant's symptoms failed to respond to medication management resulting in further "forms of treatment . . . only offered and

health treatment as conservative or routine during periods of sobriety.[6]  *See Ross v. Berryhill*, No. 3:18-CV-42 (HEH), 2019 WL 289101, at *11 (E.D. Va. Jan. 3, 2019), *report and recommendation adopted by* 2019 WL 281191 (E.D. Va. Jan. 22, 2019) (finding it reasonable to discount allegations of limited mental functioning where "psychiatric symptoms responded well to conservative treatment" of medication and outpatient therapy).

The Court therefore finds that the ALJ properly analyzed LCSW Jacobsen's medical opinion in accordance with the regulations.  The Court also finds that substantial evidence supports her findings.

## V.    CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 18) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 21) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Henry E. Hudson and to all counsel of record.

---

administered to those with the most severe cases of depression." *Id.* at 363-64.  In the case, the Fourth Circuit found the ALJ erred in characterizing such treatment as "routine and conservative." *Id.* at 364.  In contrast to *Shelley C.*, and in periods of sobriety, this case does not present similar evidence of constant medication adjustment and management or other forms of treatment needed to treat severe cases of depression.  The ALJ properly characterized Plaintiff's treatment during periods of sobriety as conservative and routine.

[6] Plaintiff again challenges the ALJ's conclusion that her "mental impairments were only apparent when she abused alcohol."  (Pl.'s Mem. at 20.)  As previously discussed, based on treatment records, mental status examinations, and Plaintiff's stated capabilities, the ALJ found that Plaintiff would have no more than moderate limitations in all four areas of mental functioning "if the substance use was stopped."  (R. a 28.)  For the same reasons discussed *infra* in Part IV.A.2, the Court finds no reversable error in this conclusion.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: January 5, 2024